DUNSCOMB AND OTHERS *against The Executors of*
DUNSCOMB.

Executors and other trustees are chargeable with *interest*, if they have made
use of the money themselves, or have been negligent, either in not paying
over the money, or in not loaning or investing it, so as to render it pro-
ductive. The time from which interest is to be charged, in case of negligence,
varies according to circumstances. Six months from the time the money
was received, is a reasonable period, in most cases, from which to charge
interest against the trustee.

Where a testator devises his real estate to his daughter, and empowers and
directs his executors to sell the real estate, and the daughter marries and
has a child, which dies, and the mother also dies before the sale of the es-
tate, leaving a husband, he is entitled, as tenant by the curtesy, to have the
*interest* of the money arising from the sale secured and paid to him, during
life, in lieu of the rents and profits of the land.

Though the *general* rule is, that executors must pay *costs* when they pay *in-
terest*, because they are in default ; yet, where the devisee, or *cestuy que
trust*, demand more than he is entitled to receive, and the executor
properly submits to the direction of the court, he will not be compelled to
pay costs.

THE bill stated, that the plaintiffs are the only surviving
children and heirs of *Andrew Dunscomb*, son of *Daniel
Dunscomb*, deceased. That *Daniel Dunscomb*, on the 7th
of *January*, 1795, made his will, and devised the one fourth
of all his estate, real and personal, to his son *Andrew ;* and if
he died before the testator, then his share to go to his chil-
dren, in equal proportions. The testator gave to his exe-
cutors power and direction to sell his estate, and divide the
proceeds according to his will. The executors, on the death
of the testator, took possession of the estate, real and per-
sonal, and sold the real estate, and received the proceeds,
and also the rents and profits before the sale. *Andrew*, at
his death, left five children, two of whom, *Catharine*, and
*Andrew B.*, died. *Catharine* married one *West*, who is
still living, and by whom she had one child, since deceased,

without issue. *Andrew B.* died after his sister, under age, and without issue. The three surviving children, plaintiffs, claim the share that would have come to their father under the will, of which they alleged there remained due to them 1,731 dollars and 84 cents, with interest ; and they prayed for an account, and that the executors might be decreed to pay the amount, with interest.

The answer admitted the will, the receipt of the rents, &c. the sale of the real estate on the 31st of *January,* 1804, that Mrs. *West* never had actual possession of the real estate before it was sold; but there was no adverse possession, the possession being actually held by the defendants, as co-devisees and co-tenants, in common; that Mrs. *West* died two days before the sale of the real estate; and the other persons at the times mentioned in the bill ; that the husband of Mrs. *West* is still living, and resided, and still resides, out of the state; that the share of the nett proceeds due to Mrs. *West,* was 1,046 dollars and 36 cents ; that on the 23d of *April,* 1805, the defendants paid to the guardian of the two infant plaintiffs, 3,500 dollars, leaving 685 dollars 47 cents, which the defendants have always been, and are still, ready to pay to the plaintiffs, if right and proper; that the plaintiffs are next of kin of *Andrew B. Dunscomb,* deceased; that the husband and administrator of Mrs. *West* claimed the 1,046 dollars and 36 cents, being her share, as *personal* estate ; and the defendants denied the claim, as the real estate was not sold at the time of her death ; that her husband *now* claims *interest* on the amount, as tenant by the curtesy, *for life,* and that the principal ought to be put out on security, for that purpose ; that the plaintiffs do not acquiesce in either claim of the husband of Mrs. *West,* and the defendants do not know to whom the money can be paid with safety.

The defendants denied that they ought to pay *interest,* as they had always been ready to pay the principal, when advised or directed by this court how the same ought to be

1815.

DUNSCOMB
v.
DUNSCOMB.

paid ; and they claimed to have their costs allowed to them out of the fund in their hands.

The cause was submitted to the court on the bill and answer.

*Irving*, for the plaintiffs.

*Riggs*, for the defendants.

THE CHANCELLOR. 1. The plaintiffs are ' entitled, of course, to the sum of 685 dollars and 47 cents, and the only point, on this part of the case, is, whether they are entitled to interest upon that sum, which has lain unproductive for many years in the hands of the defendants. Why it was not paid to the guardian of the plaintiffs, (who was also guardian of *Andrew B. Dunscomb*, in his lifetime,) and to whom the other portion of the moneys belonging to them was paid, does not appear. The executors say it has always been kept in readiness to pay to the persons entitled, when demanded. But this is no sufficient excuse. If they had met with any real doubt or difficulty, as to the person authorized to receive, they could have applied to the court for advice, or brought the money into court. If the money (as we are at liberty to suppose) has been mingled with their own moneys, it has answered the purpose of credit, and the rule is settled, that executors, and all other trustees, are chargeable with interest, if they have made use of the money themselves, or have been negligent, either in not paying the money over, or in not investing it, or loaning it, so as to render it productive. (*Treves* v. *Townshend*, 1 *Bro.* 384. *Rocke* v. *Hart*, 11 *Ves.* 58.) The rule is founded in justice and good policy ; it prevents abuse, and it indemnifies against negligence. This was also the rule in the civil law, when the guardian was guilty of negligence in suffering the money of the minor to lie idle. *Quod si pecunia mansisset in rationibus pupilli, præstandum quod bona fide per-*

*cepisset, aut percipere potuisset: sed fœnori dare cum potuisset, neglexisset.* (*Dig.* 26. 7. 58.)

The defendants must, in this case, account for interest on the above principal sum; and as to the time from which interest is to be computed, in such a case of negligence in suffering the money to lie idle, there does not appear to be any absolute rule, and the time must vary according to circumstances. It would be laying too heavy a hand upon executors, to charge interest from the moment money was received. In some cases, executors are allowed a year to look out for some due appropriation of the money, and in other cases it would be unreasonable. Here the executors show no pains or effort to discharge themselves of the money. I observe that six months was the time allowed, in a like case, by the civil law, to the tutor to invest the funds; (*Domat,* b. 2. tit. *Tutors,* ch. 3. s. 23. *Voet,* lib. 26. tit. 7. s. 9.;) and if the defendants are charged with interest after six months from the time they received it, it will not be unreasonable in this case, and I shall accordingly direct it.

2. The husband of *Catharine P. West* is entitled, as tenant by the curtesy, to the interest of the proceeds of her share of the real estate, which was sold after her death. His right became perfect upon her death, and he was seised in fact, by the seisin and possession of the co-devisees, as tenants in common with her, and claiming only their undivided shares with her under the will. It will, therefore, be the duty of the defendants to place the sum of 1,046 dollars and 36 cents at interest, on good real security, or invest it in public stock, and pay the interest thereof to *William West,* as the same shall from time to time accrue, during his natural life; and the plaintiffs, and their lawful representatives, will be entitled to the principal, upon his death. The case of *Sweetapple* v. *Bindon,* (2 *Vern.* 536.,) contains the rule applicable to this case, allowing the interest of money to be settled upon the tenant by the curtesy, in lieu of the profits of the land.

3. The only remaining point in the case is as to costs. It does not follow, as an inevitable consequence, that executors must pay costs in all cases where they must pay interest; though the *general* rule is, that they must pay costs when they pay interest, because they are in default. (1 *Ves.* jun. 294. 7 *Ves.* jun. 129. 11 *Ves.* jun. 61. 582. 13 *Ves.* jun. 402.) If the demand of the plaintiffs had been confined to the sum of 685 dollars and 47 cents, the defendants ought to have paid costs; but the demand went further, and embraced a larger sum, to which the plaintiffs are not entitled until the death of the tenant by the curtesy. That demand has been successfully resisted, and it was a question properly submitted by the executors to the direction of the court. Under the circumstances of the case, I cannot allow costs to either party, as against the other.

Decree accordingly.