## James F. Farwell *v.* Joseph Steen.

### *Guardian. Interest.*

When the defendant was appointed guardian of the plaintiff, he received as such guardian some securities bearing annual interest, and subsequently received other securities bearing simple interest, and afterwards collected them all, and mingled the money with his own, and rendered no account of the exact amount of interest he received before mingling the money as aforesaid. He made some investments in stocks and real estate from the fund formed by the commixture, from which he received more than six per cent., but the funds of his ward could not be traced directly and wholly into any of these transactions. *Held*, that the guardian was chargeable with annual interest on the whole trust fund.

A guardian should not be allowed compensation for taking care of the trust fund while he himself is the borrower of it.

Appeal from a decree of the probate court upon the allowance of the defendant's account as guardian of the plaintiff, a minor. The case is sufficiently stated in the opinion. The court, at the September term, 1873, Barrett, J., presiding, rendered judg-

ment on the report, *pro forma*, allowing the items of the account as stated by the commissioner, except the items of interest, and directed that annual interest be computed by the clerk, according to § 3, No. 61, of the Laws of 1866, instead of simple interest, computed by the commissioner ; to which the defendant excepted.

*Field & Tyler*, for the defendant.

The only question presented by the exceptions is as to the mode of computing interest on the guardian's account. The statute of 1866 was passed long after the trust was assumed, and applies only to " notes, bills, and other similar obligations," when there is an express contract to pay annual interest. It is to be assumed that the guardian received the estate and managed it in view of the then existing laws of the state as to interest. The law had fixed the rate at six per cent., prohibited the taking of a greater rate, and provided that if a greater rate was taken, the excess might be recovered back. Comp. Sts. ch. 76.

Not only was this the *rate* fixed by the statute, but the supreme court, as early as the year 1824, made a rule that " interest upon *interest* is not allowed." 1 Aik. 410. In *Wheelock* v. *Moultons*, 13 Vt. 430, the court also held that " interest upon interest on a running account," would not be allowed. Annual interest is only allowable when there is an express contract to pay it ; and then simple interest on the sum annually falling due and unpaid, is allowable to the time of final settlement ; not as interest upon *interest*, but because the annual interest itself becomes a debt. *Catlin* v. *Lyman et al.* 16 Vt. 44.

We are aware that courts of equity have, in some cases, directed the accounts of trustees and guardians to be computed at compound interest—not as legal *interest*, but as a *punishment* for a violation of an express trust, or for gross mismanagement of the funds. Hill Tr. 569, 570, 571, n. " But such an interposition requires extraordinary circumstances to warrant it." Hill Tr. 820, n. This subject is fully considered in 2 Kent. Com. 252, and the rule stated in the text, that compound interest is to be computed only when the guardian is grossly delinquent in the management of his trust. But here there has been no violation of

the trust, no mismanagement of the funds, no loss of interest by their lying idle, and there is no claim but that the defendant has managed his trust with the utmost fidelity.

*E. W. Stoddard,* for the plaintiff.

A guardian's trust is one of obligation and duty, not of speculation and profit. He cannot reap any benefit from the use of the ward's money, and all profit shall accrue to the ward. 1 Story Eq. Jur. 465 ; Reeve Dom. Rel. 325 ; Perry Trusts, 389 ; *Green* v. *Winter,* 1 Johns. Ch. 26. If a trustee receive trust funds and appropriate them to his own use, or if he has unreasonably delayed to render an account, he is chargeable with compound interest upon the funds, and with more, if he has made more by the use of the money. *Raphael* v. *Boehm,* 11 Ves. 92 ; *Schieffelin* v. *Stewart,* 1 Johns. Ch. 620 ; *Robinson* v. *Robinson,* 9 Eng. L. & Eq. 69 ; *Jones* v. *Foxall,* 13 Eng. L. & Eq. 140 ; *Robbins* v. *Hayward,* cited in note to *Fay,* Judge v. *Howe,* 1 Pick. 527 ; *Boynton et al.* v. *Dyer,* 18 Pick. 1 ; *De Peyster* v. *Clarkson,* 2 Wend. 78 ; *Hapgood* v. *Jennison et al.* 2 Vt. 294 ; 2 Redf. Wills, 886. The principle that a trustee must account for all profit, is not confined to the *common law.* The *civil law* recognizes the same doctrine, and holds trustees to so strict an account, that if they convert trust funds to their own purposes, they are to be charged interest " *non ex more regionis, sed gravissimas vel maximas usuras,*" or double the usual rates. 1 Domat. Civil Law, Book 3, Tit. 5, § 1, pl. 1952 ; Dig. 3, 5, 38 ; Code, 5, 56.

The opinion of the court was delivered by

Ross, J. The referee has stated the account of the defendant as guardian of the plaintiff, subject to the opinion of the court upon the facts stated. The only question made on this statement of the account is, whether the defendant, on the facts found, is to be charged with simple interest as cast by the referee, or with annual interest as ordered by the court below. The only facts found bearing upon this question are, that at the time the defendant was appointed guardian, he received some securities bearing interest annually ; afterwards, from the sale of real estate, he received in.

payment, notes on demand bearing simple interest, but soon—the exact time is not stated—collected all said notes, and mingled the money with his own ; that he has rendered no account of the exact amount of interest he received before he mingled the ward's funds with his own ; and that he has made some investments in stocks and real estate, from the money arising from the ward's funds commingled with his own, from which he has received considerably more than six per cent., but the ward's funds could not be traced by the referee, directly and wholly, into any of these investments. The duties of a guardian are specific and well defined. He is to keep the ward's funds separate and distinct from all other funds. He is to keep them securely invested, and as profitably for the ward as he can consistently with the exercise of that degree of prudence with regard to their security, which a prudent man would exercise in regard to his own funds which he desires to keep, and keep *invested* securely. He is to be prepared, at all times, to account for the funds received and invested, with all the profits derived therefrom. He is bound to collect funds that are unproductive, and invest them where they will be productive, so far as he consistently can without endangering the safety of the fund. It might not always be his duty to collect a debt which is due and bearing simple interest, and invest it at annual interest. That would depend upon whether he could do so, retaining equal security for the payment of the debt. He is not bound to speculate, nor to demand nor take more than lawful interest. He might not be bound to collect the interest each year, on debts bearing annual interest. The amounts might be so small that what he could lawfully obtain above simple interest by reinvestment, would not pay for the trouble of collecting. For this service he is to receive reasonable compensation. The trust is not to be made a source of profit to him above this reasonable compensation. The fund belongs to the ward, and all the profits issuing from it by being thus invested. When the guardian fails to account for what profits he has received, or has himself become the borrower of the fund, he has, by his own fault and by a breach of his trust, put himself in condition where he cannot complain if he is charged with the highest rate of interest allowed by the

87

law of the land where he administers his trust. To charge him, under such circumstances, with a rate of interest less than the highest legal rate, would be to hold out inducements to guardians either to become borrowers of the ward's funds, or to refuse to account for the profits actually received. Courts have, in case of a breach of the trust, to make it certain that the ward received all the profits, charged the guardian with compound interest, and sometimes with a rate of interest higher than the legal rate. Universally, where the funds have been used in speculations, and can be traced, and more than the legal rates have been realized, courts charge the trustee or guardian with all the profits realized, because they belong to the ward; although, if the speculation proves disastrous to the ward's interest, the guardian will be charged with the loss, as he has made the loss his own by a disregard of his duty. The referee has allowed the guardian for taking care of the fund while he was himself the borrower. We do not understand that this is allowable under ordinary circumstances. To allow him for taking care of the funds while he was himself the borrower, would also be an inducement for him to become such borrower. The referee has found it was reasonable in this case, and no question is raised in regard to it. We have thought it best, however, to suggest a caution, that the allowance in this case may not be regarded as a precedent for the establishment of such a rule.

Judgment affirmed.