COSIMO MASCARI *vs.* GUISEPPE MASCARI & others.

Suffolk.     January 4, 1926. — February 26, 1926.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* To reach and apply property conveyed in fraud of creditors, Plaintiff must come into court with clean hands, Laches.

In a suit in equity against several defendants to establish a debt owed to the plaintiff by one of them, the principal defendant, and to reach and apply toward payment thereof his interest in real estate standing in the name of others, it appeared that at one time the debt owed to the plaintiff was secured by a mortgage on the real estate in question; that at the request of the principal defendant the plaintiff foreclosed the mortgage and purchased the property at the foreclosure sale, and then conveyed it to a common friend of the parties, all in furtherance of a scheme to avoid an attachment made upon the principal defendant's interest in the equity of redemption, and to enable him to settle the claim of the attaching creditor; and that the plaintiff received nothing from the foreclosure sale.   The master declined to credit the principal defendant with the price at which the property was sold at such fore-closure.   *Held,* that, the plaintiff having received nothing from the foreclosure sale, which was held at the request and for the benefit of the defendant, he should not be required to account for the amount so bid by him.

In the suit above described, the defendant contended that the plaintiff was barred from relief because he did not come into court with clean hands.   It appeared that, besides his participation in the foreclosure sale above described, he had accepted several years before taking from the defendant the mortgage thus foreclosed, a mortgage from the defendant and made entry thereunder to hinder and defeat a claim of the defendant's wife in divorce proceedings, and that, three years before the new mortgage was made, the former mortgage was dis-charged.   It also appeared that a part of the debt which the plaintiff was asking to establish was for money lent by the plaintiff to the defendant for the settlement of divorce proceedings.   It was found that the defendants were all attempting through fraud to prevent the plaintiff from collecting the debt due him.   *Held,* that

(1) The participation by the plaintiff at the defendant's request in the proceedings as to the earlier mortgage had no bearing upon any issue between the parties in the present suit, and was not a bar to its main-tenance;

· (2) The proof of the plaintiff's claim in no way related to any fraudu-lent act of his with respect to the foreclosure of the second mortgage; and the defendants could not defeat that claim by relying on a fraud committed on another person at their request.

In the suit above described, it appeared that the plaintiff's claim was first evidenced by a note of the defendant dated in 1913, payable in seven years and secured by a mortgage; that the mortgage was foreclosed as above described in 1916, when the plaintiff bought the equity of redemption at the foreclosure sale and conveyed it to the common friend of the parties, and that thereafter the defendants through fraud sought to prevent the plaintiff from reaching the real estate to satisfy his debt. This suit was brought in 1921. The plaintiff was the defendant's brother and'there was evidence warranting a finding that his failure to bring the suit sooner was due to a belief that to bring suit would embarrass his brother by forcing payment at a time when he was unable to satisfy the debt. *Held*, that a finding of laches on the part of the plaintiff barring the suit was not required as a matter of law.

BILL IN EQUITY, filed in the Superior Court on March 28, 1921, against Guiseppe Mascari, Josephine Mascari, Michael Mascari, and Edward Mascari, to establish a debt alleged to be due to the plaintiff from the defendant Guiseppe Mascari, and to reach and apply in payment thereof real estate standing in the name of the defendants, Edward and Michael Mascari.

In the Superior Court, the suit was referred to a master. Material facts found by the master and exceptions by the defendants to his report are described in the opinion. The suit was heard by *Qua*, J., upon the master's report. After causing the entry of the decree described in the opinion, he reported the suit to this court for determination.

The case was submitted on briefs.

*E. L. Curtiss & A. L. Braley*, for the defendants.

*G. A. McLaughlin*, for the plaintiff.

CROSBY, J. This is a suit in equity in which the plaintiff seeks to reach and apply certain real estate claimed to belong to the defendant Guiseppe Mascari, in payment of an alleged loan of $2,000 and interest. The case was referred to a master who heard the parties and filed a report, which has been confirmed. The defendants' exceptions to the report have been overruled and a decree entered in favor of the plaintiff.

From the facts found by the master, it appears that the plaintiff and the defendant Guiseppe (who will hereafter be referred to as the defendant, or principal defendant), are brothers, and at one time were in business together. On or

about July 2, 1913, the defendant executed and delivered to the plaintiff a note for $2,000, secured by a mortgage on real estate in Boston, and payable in seven years from its date with interest at the rate of five per cent per annum. This amount represented various sums which the defendant owed the plaintiff. The property, equity in which at the time was vested in the defendant, was subject to two prior mortgages. Previously to the giving of this mortgage, on August 9, 1906, the defendant, to protect his property from attachment by his wife in case she should institute divorce proceedings against him, by arrangement with the plaintiff, executed to the latter a mortgage on his property for $10,000. In 1908 his wife instituted divorce proceedings and on October 9, 1908, the plaintiff made entry upon the premises for the purpose of foreclosing the mortgage. On April 25, 1910, at the request of the defendant, the mortgage was discharged.

For a period of three years after the execution of the $2,000 mortgage, the defendant paid the plaintiff the interest thereon when due. In 1916, one Leah Wollman brought suit against the defendant for personal injuries and attached the real estate which was subject to the plaintiff's mortgage; for the purpose of defeating her rights under the attachment, the plaintiff, at the request of the defendant, on July 6, 1916, made entry on the premises to foreclose the mortgage, and on July 18, 1916, by a foreclosure sale, sold the property for $800, purchasing it himself. At the time of this foreclosure the real estate was subject to a first mortgage on which there was then due about $10,000, and a second mortgage of $350 held by one Rosenberg. The defendant, in order to settle the Wollman suit and to reduce the amount due on the first mortgage, borrowed $3,180. The loan was made with the understanding between the lenders and the defendant that the Rosenberg mortgage should be foreclosed, and the equity in the property be conveyed by the plaintiff and his wife to one Chincholla, a common friend of the plaintiff and defendant. This was done to accommodate the defendant and to enable him to obtain the loan of $3,180. Incidental to obtaining the loan, the plaintiff borrowed

$300 from Rosenberg, which sum, together with $50 furnished by the defendant, was paid to Rosenberg, who then assigned his mortgage to Chincholla. The mortgage was foreclosed by Chincholla and the property bought in his own name for $150. It was part of the arrangement between the plaintiff and defendant that, if the former conveyed the property to Chincholla, the defendant would execute a new mortgage to the plaintiff for $2,000 whenever Chincholla should reconvey the property to the defendant. Chincholla knew of this arrangement and was asked by the plaintiff to give him a new mortgage to secure the amount due him from the defendant, and Chincholla promised to do so.

The loan of $3,180 above referred to, after deducting expenses, was applied to the settlement of the Wollman suit, and to reducing the amount due on the first mortgage to $8,675. The balance, $450, was paid to the plaintiff, and reimbursed him for the $300 spent by him to procure the assignment of the Rosenberg mortgage for the benefit of the defendant, and reduced the defendant's indebtedness to the plaintiff by $150. Since that time nothing has been paid on account either of principal or interest on the debt due to the plaintiff. It is found that there is now due him $1,850 with interest at five per cent per annum from December 19, 1916.

The master found that in 1913, when the mortgage was given, no suits whatever were pending against the defendant in any court, nor was there any prospect of such suits. On March 5, 1918, Chincholla deeded the real estate to the defendant's sons, Edward and Michael, and to a woman known as Josephine Mascari who lived with the defendant but to whom he was not then married. The consideration for this conveyance was $350, although the equity in the property was over $8,000. There were various conveyances of the real estate afterwards between these three defendants, but the master found that the record title now stands in the names of the defendants Edward and Michael; that Michael has no valid interest therein; that Edward's interest is limited to the sum of $250; that the interest of the defendant in the equity is $8,500 less $250 invested by Edward; that

all the transfers subsequent to the execution of the deed from Chincholla to Josephine, Edward and Michael, culminating in the vesting of title in Edward and Michael, were in fraud of the plaintiff's rights and for the purpose of hindering and delaying him in collecting from the defendant the amount due.

The defendants filed three exceptions to the master's report which will hereafter be considered. They were over-ruled by a judge of the Superior Court, who ordered a decree to be entered confirming the report and establishing the claim of the plaintiff for $1,850, with interest thereon at five per cent from December 19, 1916; directing the principal defendant to pay the same to the plaintiff, and in default of such payment within thirty days from date of the decree, that a special master be appointed to sell the real estate, subject to the first and second mortgages thereon, and out of the proceeds of the sale to pay the plaintiff the amount due; and that the surplus, if any, be paid to the several defendants according to their respective interests. A decree has been entered in accordance with the order so made.

The first exception is for failure of the master to find that the defendant was entitled to a credit of $800, the purchase price for which the plaintiff bid off the property when he foreclosed his $2,000 mortgage and purchased it in his own name, in 1916. The master found that at the request of the defendant, the plaintiff deeded the property to Chincholla upon the defendant's promise again to secure him for the full amount due. There was no fraud on the plaintiff's part in connection with this transaction, and it is found that the other defendants had knowledge of the promise of the principal defendant to the plaintiff; they also knew that $1,850 was due him, yet all joined in the attempt to prevent its payment. The plaintiff received nothing from the fore-closure sale, which was consummated at the request and for the benefit of the defendant. Accordingly, he should not be required to account for the amount so bid by him. As the trial judge correctly ruled, if the plaintiff's rights to the security given by the mortgage have been lost by reason

of its foreclosure, the defendant still owes the plaintiff $1,850 with interest, which he is entitled to have satisfied out of the real estate standing in the name of the defendant's sons, who hold it for the purpose of preventing the plaintiff from collecting his debt, as it has been found that all the defendants knew of and participated in the fraud to deprive the plaintiff from obtaining the amount due him. This exception was rightly overruled.

The second exception is based upon the failure of the master to find that the plaintiff is not entitled to relief in equity on the ground that he did not act in good faith but was a party to a fraud in connection with the mortgages above referred to. The taking of the $10,000 mortgage in 1906 was to protect the defendant from proceedings that might be instituted against him by his wife. But the entry and foreclosure of this mortgage in 1908, so far as appears, have no bearing upon any issue between the parties in the present suit. The master found that the money paid to the defendant's wife in the divorce proceedings was loaned by the plaintiff to the defendant and is part of the claim which the plaintiff seeks to recover in this suit. The alleged misconduct of the plaintiff is not a bar to the maintenance of this bill.

The defendants also contend that the foreclosure of the $2,000 mortgage was fraudulent, because it was for the purpose of preventing or hindering the attachment of the property in suits against the defendant, and for the purpose of preventing the collection of any judgment that Leah Wollman might obtain in her suit against the principal defendant. No fraud has been perpetrated by the plaintiff on these defendants, who, as the master finds, are all attempting to prevent the plaintiff from collecting a debt which they know to be due to him. The proof of his case is in no way related to his fraudulent acts and he does not rely upon them. The defendants cannot defeat his claim because of a fraud practised upon another person. *Lufkin* v. *Jakeman*, 188 Mass. 528. *Murphy* v. *Moore*, 228 Mass. 565. *Magee* v. *Magee*, 233 Mass. 341, 346.

The third exception is based upon the failure of the master

to find laches. There was evidence that the plaintiff's wife went to the defendant and requested that the interest on the mortgage note be paid; that the defendant claimed he could not pay because many of the apartments in the building on the real estate were not rented. There was also evidence that the plaintiff had not brought suit at an earlier date because the principal of the note was not due until 1920. The bill was filed March 28, 1921. The position of the parties has not changed. The principal defendant and the defendant Edward are the only persons who have any interest in the property, and the interest of the latter is limited to $250. These defendants have not in any way been prejudiced by delay. It cannot be said that the plaintiff's suit is for that reason barred. *Boston Rolling Mills* v. *Cambridge,* 117 Mass. 396. The failure of the plaintiff to bring a suit at an earlier date may well have been found to be due to a belief that the bringing of such a suit would embarrass his brother by forcing payment at a time when he was unable to satisfy the debt. The failure of the master to find laches was doubtless due to his subsidiary findings and the inferences drawn therefrom. The trial judge was justified in declining to rule that delay in bringing suit constituted laches. *Snow* v. *Boston Blank Book Manuf. Co.* 153 Mass. 456. *Stewart* v. *Finkelstone,* 206 Mass. 28, 36. *Hawkes* v. *Lackey,* 207 Mass. 424, 430.

The interlocutory decree overruling the exceptions to the master's report and confirming the report, and the decree entered thereon, are affirmed with costs of the appeal.

*Ordered accordingly.*